172173. Sorry about that. We were not prepared to argue a lot. My tabs are a little adhesive this morning. If you could move along, counsel, please, just to argue your case. Thank you. Good morning. My name is Margaret Cates. I'm an assistant federal defender in Albuquerque and I'm representing Mr. Sedillo. More or less by my estimation, I would say I raised over 20 issues in my sentencing memo. Other than my request for a downward departure for open representation of criminal history, the out-of-district visiting judge addressed none of my issues whatsoever. Rather, he chose to focus on the fact that my client had children out of wedlock and was not married to their mother. That's what he asked my client about and, in fact, then ordered my client to marry the mother of his children. You weren't sure you were in church or a courtroom. Exactly. Now, there are times when courts giving a very bare-boned judgment is okay, but this isn't one of them. In these unique circumstances and in this case, the court had to say more. In this court's cases, a district court is directed to give an opinion. As the Supreme Court said in Rita, it doesn't have to be a full written opinion. The question of whether it's a brief opinion, a long opinion, whether it's written, what's addressed, has to do with the circumstances. Here, there is no way for this court to meaningfully review what the visiting judge did in our district court in Albuquerque because other than expressing his concern about the fact that my client had children out of wedlock and wasn't married to the mother, he discussed nothing. I raised an extremely important non-frivolous issue, the issue of an ATF surge. I don't know how familiar this court is with it, but it was a big issue in Albuquerque. It was a big issue in our legal community. It was a big issue in our actual community. It was in the press, and there's a lot of litigation going on about it. So what happened, and this has happened around the country, and the Inspector General has filed a report actually criticizing the way the ATF, a sort of band of agents, undercover agents, and confidential informants work. So they go to a city, as this time in Albuquerque, they hit the city, and they go to, I can speak to Albuquerque, they go to a poor neighborhood, and they start saturating that poor neighborhood, and they start targeting, in this case, drug users. And they start getting drug users to get them drugs and sell them drugs, which isn't surprising because if you're a drug user, you know where to get drugs and how to get drugs, and you need money to get drugs, and when someone comes to you and asks you to get them drugs, it's a rather attractive offer. And additionally, the ATF was offering higher than usual prices for these drugs. So they go, they target poor people, they target drug addicts, and then they begin ratcheting up the sentence. So they make a sale, and it would be a sale that could be definitely a prosecutable sale in either state or federal court, and they don't arrest the person, and they get them to make another sale, or they try to get them to sell guns. And this operation was particularly offensive in our jurisdiction because of its targeting of poor people, of minorities, and one of the issues which being litigated isn't specific in this case, because Mr. Cedillo is not African-American, but African-Americans were targeted eightfold. I addressed this issue first in my motion requesting, after the case had been reassigned to the out-of-district, out-of-circuit visiting judge, I requested that it be reassigned to the then Chief Judge Armijo. She had had the case all along, and in fact, she's one of the judges that the selective enforcement litigation was taking place in front of. It was in front of judges. Why was it assigned to a visiting judge in the first place? Why was it? My opinion? It didn't say why. I'm not asking for your opinion. I'm just asking if the record. No, it just says reassigned. No explanation. No explanation at all. And it wasn't reassigned until after I had filed my sentencing memo, and the government had responded in the sentencing memo saying that they recognized that it was possible that the court, in its discretion, could give a downward departure. It was after, obviously, after the pre-sentence report in which probation said that they thought a variance could be appropriate. It was after all that that it was reassigned to this judge. Was it technically reassigned, or was it just a visiting judge trying to help with a docket? It was technically reassigned. So what typically happened when he came, he would come, and from my experience, it was always Judge Armijo's cases. It may have been other cases, but in my office, the case I was familiar with, it would be Judge Armijo's cases. She would reassign a sentencing docket of cases to him, and he would sit that day on those cases. And it was reassigned. Where was Judge Janelle visiting from? So he's from Midland, and he sits in Pecos. Pecos. Yeah, he's in West Texas. And he's been a district court judge for 15 years. And that's important because that would segue into my next issue of the fact that he didn't perform any of the procedural things that he needed to in the situation where there is a non-frivolous issue that is before him that is legitimate, legitimate enough that the government conceded in their, as I said, in their sentencing memo, that they would defer to the court if the court thought that were an appropriate reason for a variance. Probation suggested that a variance might be appropriate. And the court said absolutely nothing about it. And so it puts you all, as the reviewing court, in a horrible position because all you can possibly do is speculate. Literally the only thing you know that concerns him is the out-of-wedlock children and not married to the mother. And that certainly wouldn't be a permissible ground for denying a non-frivolous variance motion. I assume the record shows that he was out-of-wedlock. I mean, something in the record must have revealed that. Or was that just in the PSR? So it never specifically said out-of-wedlock or not. The judge, if you read the transcript, the judge questioned him about that. What it said in the PSR is that he had three children. He had a child from a prior relationship, and then he had two children with his fiancée. And nobody was hiding the fact that he wasn't married to her, but the judge was particularly focused on it, and that was the only thing he engaged my client in, specifically asked him questions. And when he didn't like the way he answered, he, again, basically like an interrogation, said, asked him why he wasn't married. We agree with you on this latter point. Do we just strike those domestic relations matters from the probation order, or do we have to remand? I think you have to remand, Your Honor. For that purpose. And I think the reason that you have to remand is for the same reason that an oral argument, an oral order trumps a written order. The reasoning behind that is litigants have a right. But the circuit trumps the district. Yes, it does. But I'm saying the reasoning behind that is that a litigant has the right to be in front of the court and to speak to the court and hear the court's reasoning and, through his lawyer, potentially argue that issue. But on that point, what more relief do you want than to have those conditions removed? Just completely struck? I don't think that on that particular condition. On that point. Yes, I agree, Your Honor. So then why don't we get to number one, the downward variance? Yes, Your Honor. That's a matter of district court discretion. But you still have to evaluate his discretion for abuse of discretion. How can you do that when you have no insight into it? Where's the abuse? The abuse is that he violated both Rule 32 and 3553A factors. He never addressed the 3553A factors. He specifically said his language was, pursuant to the Sentencing Reform Act and sentencing factors set forth in 3553A, which I have considered in arriving at a reasonable sentence. That's all he said about 3553 factors. What case in our circuit requires him to do more than merely acknowledge? So, Your Honor, you wrote the decision in Mendoza. And I think there's, if I may quote from that, it's right on point for what I'm saying. Mere allusion to statutory factors without accompanying discussion of application of facts lacks specificity to satisfy this duty. And then you went on to talk about the two major issues, meaningful review and to promote respect and transparency and the perception of fair sentencing to clients, to the community. And I think that's right on point. But he gave you nothing to do either of those things. The district court did mention the previous drug conviction. Your Honor, the only thing he talked about were his convictions. And that was only in the context of my motion for a downward departure for over-representation of criminal history. You were saying that, again, with the operation, the bad parts about the operation, the undercover, whatever it was, sting, that your point was that they were dragging a lot of people who otherwise wouldn't sell. And that this man would fall into that category. And the judge said, well, what about this conviction for this marijuana, which involved a substantial amount of marijuana? And then, perhaps sarcastically, pointed out that probably wasn't all for personal consumption. So the judge had that in his mind at the very least. Well, I think there are two things with respect to that. First of all, the facts of that case are completely different. That was in El Paso at the international border with that typical – there were no facts about the case in the pre-sentence report, but I think it's fair to assume it's an importation type case. Perhaps I used to work in El Paso Federal Defenders. A case that somebody would drive a car and there was marijuana hidden in a side panel and they're driving it from point A to point D. B, that is quite different from somebody who's doing hand-to-hand sales in Albuquerque. There was no evidence that he was selling drugs, hand-to-hand selling drugs. And, in fact, that marijuana case was a possession case, not a sale case. It was very different. The second thing I would like to point out with respect to your question is that's the whole problem. And that's the Rule 32 issue that I bring up. The government argued that in response to me saying he was not – there was no evidence that he was dealing drugs, and there was no evidence at all, nothing in the pre-sentence report, nothing the government provided. But the government at sentencing argued that he was already a – he was a drug dealer and that he was actively selling drugs. They said – I mean, it was outrageous to say that when it was completely based on absolutely nothing. And I specifically told the court that I needed to correct that fact. I looked at the judge's sentence statement, though, and that doesn't reference as a fact that he had previously been a drug dealer. Ordinarily, when there's a dispute of fact, the judge either has to resolve that dispute of fact or has to disregard it. He doesn't usually say he's going to disregard it. He didn't say he would disregard it here. But his sentence explanation doesn't mention prior drug dealing, does it? But that's the problem, Your Honor. He didn't do anything. So you're saying that it's – and also, there was no objection to the pre-sentence report. Well, because the pre-sentence report wasn't wrong. The person who should have objected to the pre-sentence report was the attorney for the government. Did the pre-sentence report say that he had previously dealt drugs? No, it did not. It didn't say that at all. So the judge's sentence doesn't mention previous dealing at all. You say that the problem was that he didn't still address it because it was a disputed – It was a – yeah, it was a controverted matter. And under Rule 32.1, you have to address not only disputes in the pre-sentence report, but the controverted matters as well. Correct. And what is your basis for prejudice when the judge didn't rely on that fact? Well, we don't know if he – that's the whole problem. The prejudice, we don't know if he relied on that fact. And if he did rely on that fact, that is – it's unfair, inappropriate, and that is prejudice. To rely on a fact where there's absolutely no proof whatsoever would be prejudice. But, again, the court has no basis to even evaluate that or analyze that. And if I may, I will save my one minute and 21 seconds. Unless Judge Ebel had further – No. I'm sorry. I didn't mean – No, no, no. Reserved. Thank you. Good morning. May it please the Court. Counsel. My name is Paige Messick. I'm an assistant U.S. attorney in the District of New Mexico. Could you address this last point? Because, frankly, it's the one I'm most concerned about. Rule 32-1, where the court did not explicitly say that it was going to disregard the fact – the allegation that this defendant was a prior drug dealer. That's true, Your Honor. The court did not explicitly say that. The court did not resolve this dispute in inferences between the parties. The defendant never asked the court to resolve that under Rule 32. I would say, first, this is a plain error review because there was no objection. Under the first prong of plain error, there isn't any error because we don't have a real dispute of facts here. What we have is a dispute about the spin that should be put on the undisputed facts in the PSR. Before you assume that, can you back up and tell us why you think it's plain error and when a defendant has an obligation to object under Rule 32 at the end of a sentencing? This court held so in Cook and in Williamson. And so defendant's contention that this can't be reviewed for plain error is just foreclosed by this court's precedent. Okay, be specific. What should have happened here? What did happen? What should – when did the defense counsel have an obligation to say at the end of the sentencing or sometime before it was over? Judge, we object. You did not honor Rule 32 as required. And, therefore, then the district court can say, oh, I guess I didn't. Let me address that so we don't have to deal with it on appeal. Sure. That could have been said before the court began to pronounce sentence or it could have been objected to after the pronouncement of sentence. Defense counsel could have said, Your Honor, we have a dispute here. You didn't rule on that. I'd like you to take that back and go back, rule on that dispute, or say that you're not taking it into account in your sentence. And the court could easily have done that at that point. That would prevent us having to be here arguing about it now. So let's say we do have a plain error review. The potential for prejudice is fairly significant. We all know that people with prior history of drug dealings are likely to be sentenced more harshly than those that don't, that they're mere users. So there is almost – I mean, there's certainly a potential for prejudice. And we also know that Rule 32 says if there's matters in dispute, the court shall resolve them. So why isn't this plain error? Well, because I don't think that the defendant has carried his burden under plain error to show that the court would have resolved that question in his favor. If he wants to be – Was there any evidence that he was a dealer? Well, the evidence that he was not a dealer before is that he doesn't have a prior conviction for dealing drugs. That wasn't my question. I understand that. Hard to prove a negative. Was there any evidence that he was a prior dealer? Well, there are certainly valid inferences, strong inferences you can take from the facts that were before us. Sidio was able, at basically one day's notice, to come up with $1,800 of methamphetamine. He had a prior conviction for an amount of marijuana that was not consistent with personal use. How much was it? Between 50 and 2,000 pounds. Yeah, okay. So the court, I think, rightly was skeptical that this was his first rodeo. He also lacked any consistent, legitimate source of income. And if you take all of those facts together, that undercuts the defendant's argument that the government made him do this. And so you would say that that evidence was enough that had the court been asked to rule, the court could have relied on that evidence to say, I believe, I will accept the fact that he might have been a prior dealer. And I don't think the court even really has to go that far. I suppose saying he might have been would be fine. I don't think the court has to find that he did deal drugs before. At the very least, it would say that the fact the court didn't rule that out can't be any worse than the court saying, I'm going to rule it in. And then we look at, had he ruled it in, it would have been defensible under that evidence. So it couldn't have been an error to simply not rule one way or the other. I agree that it certainly, if you think that could be an error, it certainly couldn't be an error that would have prejudiced him. Under plain error. Under plain error. Okay. That's all I need. All right. Would you address the argument that the 3553A factors are not adequately developed by the trial court? Yes. By the sentencing court. Yes. First, we're also under plain error review in this argument, too. But that shouldn't matter because under this court's precedence, it is clear that the district court committed no error here. In explaining the sentence, it mentioned the defendant's criminal history. It said that there was a good amount of drugs involved and then said that it had considered the 3553A factors, found the guideline range in this case to be reasonable. That is extremely similar to the explanations given by the district courts that were found to be sufficient in Rita, Sarasurya-Savala, and Ruiz-Torraza. So there should be no error here whatsoever, but if there were any, it certainly couldn't be plain under those cases. And would you address the marriage counseling aspect of the probation order? Either you get married or pay your child support. The government agrees that the district court could not order the defendant to get married. But as the district court later explained in response to this marriage objection, well, that's only an alternative to paying child support. If you get married, then you wouldn't have to pay any child support. So it's really just being, I suppose, more comprehensive with the condition. And so the court did have the power to order payment of child support as a condition of probation? The court did have that power. What's the best case on that point? Well, I think there were a couple of Fifth Circuit cases that we cited in the brief, but I think that the best source of authority for that is actually just the statutory language and the guideline language, 3563B1 allows a court to order a defendant to support his dependents. So why not just remand and tell him do that instead? That would be fine. The court, I think, also, though, could look at the written judgment in interpreting the oral pronouncement. Oral pronouncement is ambiguous because there is no order of child support, so it's not clear what he is supposed to do by opening an account and how much money he's supposed to put in that. The written judgment. None of that is in the guideline or the statute, that you are to go down and open an account, whatever that means. Because these children are out of wedlock, he's only a putative father. Presumably there would have to be blood testing and everything else. All that the guideline and the statute say is we're going to make it a condition of your supervised release that you honor any child support orders, right? And that's not what the district judge did here. So I think in the written judgment, it does become clear that what the court is doing is ordering him to comply with any child support obligations. So if there is no child support order, then he's got nothing to comply with and he has nothing to worry about on supervised release. I don't think the court said you've got to comply with any. I think the court said you either get married or you pay child support. But my impression was, and I can't pull it up at this instant, that the guidelines are a little broader than simply saying you can order compliance with existing child support. I think that the guidelines are broader than that and say you can order child support. Am I correct? The guidelines take care of supportive defendants in two provisions. One is that a defendant may be ordered to support his defendant. It doesn't say comply with guidelines. That one doesn't say. It says you may be ordered to support. Yes. And then the second provision is that a defendant must comply with essentially an existing order. Right. So there's two separate obligations here. There are two. And there are case laws that said you can do that. But my concern is the vagueness question. I mean, we've got plenty of law that says conditions for supervised release have to be precise. So here we don't know what court he would go to. If he's not got domestic litigation, who would order it and how much? And as you said, paternity and everything else. I mean, it just seems, plus the fact that it's hard to relate that to this crime at all. It might be related to the characteristic of this defendant. But the court's made no effort to say that there's something about child support that's important to you. It's wholly unsupportable. So would our remedy be to simply say it's wholly unsupportable, strike it, or do we say it's wholly unsupportable, remand, and if you want to do it, prove it? I don't believe it's wholly unsupportable. The record that the district court established is that this defendant has not paid child support for his children that he claims. But there's no evidence that he was ever ordered to do so. No, there is not. But he has established that he has not supported his children financially. But that's a national problem. If the children otherwise have adequate support, he may not have had an obligation to do so. I do think it doesn't have to be related to this offense. As you mentioned, it can just be related to the history and characteristics of the defendant. And here it's clear the defendant has not financially supported his children, so I think that enough is sufficient. If we disagree with these provisions, it's either not being established by the record or at least not being articulated with the specificity required of terms of supervised release. Would it be the government's position that we simply strike those two positions or that we remand for the district court to reconsider it and do it right? I think either would be an acceptable outcome. I didn't hear Defendant Sir Henry really express a preference there. I think that she said you could remand or you could just strike them. The district court should probably have a chance to do it right if the court finds that this was— But this would require bringing this visiting judge back. I don't think that it would because— Unless you're saying we should reassign to a new judge. We don't often do that. Well, I don't think that the case was actually—I looked at the docket. I don't think it was actually reassigned officially to this visiting judge. It just—all that happened is there was a notice of sentencing and it just says, Sentencing this date in front of Judge Dunell. Well, that has to be equivalent of a reassignment. You can't just—some judge is walking in town and says, I'm here on vacation. I'm going to sentence people. That may actually be how it works in the District of New Mexico. I believe that the letters NCA are still in the caption of this case. And usually when a case is reassigned officially in the district, there's a notice that says this case has been reassigned. Please caption all future pleadings with this new judge's letters. Please direct all pleadings to the attention of the new judge. That didn't happen here. Just out of personal experience, I have had cases that have required additional attention after the visiting judge has done an initial sentencing hearing. And those have been handled by judges in the district. If they've been reassigned, it's just because Judge Armijo has taken senior status. So I think it could be a different judge on remand in our district. Thank you. Hearing no further questions. Then I am happy to help you get to your appointment on time. Thank you. I absolutely properly preserved these issues. I don't know what else I could have done. And if you think there's something else I could have done, I hope you will write it in your opinion and be clear, because I felt like this was the most preservation I had ever done. In a motion to get the case back to Judge Armijo, I explained what the issue is. In my sentencing motion, I explained what the issue is. Probation agreed that a variance was appropriate. The government conceded that a variance might be appropriate. We had argument in court. The court gave a sentence. I said specifically on the record, this is procedurally and substantially unreasonable. He asked me, what did I mean by that? I explained what was procedurally and substantively unreasonable. With respect to the Rule 35 issue, I specifically said. How much of this is referring to the specific argument about whether he was a prior drug dealer or not, as opposed to your other concerns? Well, the prior drug dealer issue is with respect to Rule 35. It obviously hooks into 3553. So I made all the objections. And then with respect to the drug dealer issue, I specifically read the transcript. I said, Judge, I need to make a factual correction. There's no evidence at all that he was a drug dealer. And there wasn't. I talked about these factors being relevant. Well, there was. I mean, there was inferences. The prosecution listed a bunch of them. I mean, the quantity of drugs, for example. Okay, but the problem with the quantity of drugs. Hold on. You're out of time. Go ahead, Judge Eagle. Oh, that's all right. No, we'll deal with it. Can I just respond to that? The problem with the quantity of drug issues. The answer is no. I will review it. I didn't realize you were out of time. No, that's all right. Thank you, counsel. Sorry, but I gave you fair warning.